IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMY DEVOSS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:16-CV-2277-D |
| | § | |
| SOUTHWEST AIRLINES CO., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this action alleging claims for interference and retaliation under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, plaintiff Amy DeVoss ("DeVoss") moves for partial summary judgment on her interference claim, and defendant Southwest Airlines Co. ("Southwest") moves for summary judgment on both of DeVoss's claims. For the reasons that follow, the court grants Southwest's motion, denies DeVoss's motion, and dismisses this action with prejudice by judgment filed today.

I

DeVoss worked for Southwest as a flight attendant beginning in 2014.[1] She resided in Tampa, Florida and commuted to her base at Baltimore-Washington International Airport

---

[1]Because both sides move for summary judgment, the court will recount the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, will do so favorably to the side who is the summary judgment nonmovant in the context of that evidence. *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

("BWI") in Baltimore, Maryland.

DeVoss's employment is subject to the "Agreement between Southwest Airlines Co. and the Flight Attendants of Southwest Airlines Co. as Represented by the Transport Workers Union of America, AFL-CIO dated June 1, 2008" ("Flight Attendant CBA"). The Flight Attendant CBA outlines two policies that are relevant to this case. First, it establishes an "Attendance Policy"—a points-based system in which Southwest reserves the right to terminate flight attendants based on attendance infractions.[2] Second, it establishes a "Commuter Policy." This policy provides that flight attendants commuting via air travel to their assignments will not be assessed points under the attendance policy if they are late or miss an assignment because their commuting flight is full. Commuting flights qualify under this policy only if they are scheduled to arrive no less than one hour before a flight attendant's reporting time.

This lawsuit arises out of Southwest's termination of DeVoss's employment. On June 24, 2015 DeVoss contacted a Southwest scheduling representative to report that she would be late for her shift due to a delay of her commuter flight. DeVoss first sought to invoke the Commuter Policy so that she would not receive attendance points. When the representative informed DeVoss that her flight did not qualify under the policy, DeVoss responded:

> DeVoss: I'm calling in sick, then, because that's—I'm not going—I'm not going to have you record me saying anything

---

[2]For example, employees who arrive later than a scheduled reporting time receive 1 point, while those who do not show up at all receive 2.5 points. A flight attendant is terminated upon accumulation of 12 attendance points.

> (unintelligible) that I'm calling the union, and this is ridiculous.
>
> [Southwest representative]: Okay. So you are calling in sick for this trip, right?
>
> DeVoss: Yep.
>
> [Southwest representative]: Okay.
>
> DeVoss: I have to, huh?
>
> [Southwest representative]: I'm sorry?
>
> DeVoss: Guess I have to, huh?

D. App. 6. After discussing alternative commuter flights to BWI that day, DeVoss responded:

> DeVoss: Do you know how many points you get for a no-show versus a sick call?
>
> [Southwest representative]: Well, a no-show is two and a half points.
>
> DeVoss: I'm going to call in sick.
>
> [Southwest representative]: Okay. So you're sick?
>
> DeVoss: Yep.

*Id.* at 11. Based on a recording of this conversation, Southwest commenced an internal investigation conducted by BWI Assistant Base Manager Carolene Goulbourne ("Goulbourne"). Goulbourne found it suspicious that DeVoss initially sought to invoke the Commuter Policy and then switched to a request for sick leave. During the fact-finding meeting, DeVoss offered Goulbourne a June 25, 2015 doctor note and indicated that the note

had already been submitted to Southwest's Attendance & Leave Department.[3] Following Goulbourne's finding that DeVoss had committed a dishonesty violation, Southwest terminated DeVoss on July 7, 2015 for a Class 1, Section 2 dishonesty violation under the Flight Attendant Work Rules.[4]

In this lawsuit, DeVoss attempts to invoke the protections of the FMLA. Southwest first notified her of her FMLA eligibility on June 8, 2015, weeks before the incident in question. DeVoss had informed Southwest that she would be absent from work for four days (June 7, 2015 to June 11, 2015) due to sinusitis. Although DeVoss had missed work on several prior occasions, she was not FMLA eligible until her June 7-11 absence.[5] In response

---

[3] DeVoss had provided a different note to Southwest, dated June 24, 2015, which did not specify the length of her absence or her inability to work.

[4] Goulbourne stated that she only sought to determine the truthfulness of DeVoss's representations during the call about her ability to work, not about whether she was ill when she visited the doctor. Goulbourne listed a number of observations that factored into her finding of dishonesty. First, DeVoss sounded "calm—even cheerful—" on the recording until she learned the Commuter Policy would not apply to her, at which point she became "audibly angry and hostile." D. App. 67. Second, DeVoss went to the airport dressed in uniform and prepared to report to work. She first sought to invoke the Commuter Policy, which meant she merely wished to find a different commuter flight and intended to work. Third, DeVoss only stated, "I'm calling in sick, then" upon learning the Commuter Policy did not apply. *Id.* Fourth, DeVoss asked about the difference in penalty points for a no-show versus a sick call, indicating that she was focused on minimizing the penalty for her late commuter flight. Fifth, DeVoss had reserved her commuter flight the night before and was dishonest about deciding "last minute" to book the flight. *Id.* Sixth, DeVoss had never voluntarily stated she was sick on the call—she merely responded "Yep" when asked if she was sick. *Id.*

[5] DeVoss was educated about her rights under the FMLA during orientation. She had also received three FMLA notices in November and December 2014, but at those times she was not yet eligible for FMLA leave because she had not met the 12-month service requirement.

to DeVoss's request for time off, Southwest sent her an FMLA notice on June 8, 2015, along with a determination that she was eligible for FMLA leave. Southwest alerted DeVoss to the process through which she could secure such leave, and directed her to submit an FMLA application by June 23, 2015. The notice stated that DeVoss's failure to do so could result in a delay or denial of leave. DeVoss never submitted the FMLA application and never contacted her leave coordinator in connection with her June 7-11 absence or the June 24 incident.

DeVoss then filed this suit in state court, and Southwest removed the case to this court. DeVoss alleges that Southwest interfered with her leave and terminated her for attempting to exercise her rights under the FMLA. She moves for partial summary judgment on her FMLA interference claim. Southwest opposes the motion and moves for summary judgment dismissing DeVoss's claims under the FMLA for interference and retaliation.

II

Southwest moves for summary judgment on claims for which DeVoss will have the burden of proof at trial. Because DeVoss will have the burden of proof, Southwest's burden at the summary judgment stage is to point the court to the absence of evidence of any essential element of DeVoss's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it does so, DeVoss must go beyond her pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in DeVoss's favor. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). DeVoss's failure to produce proof as to any essential element of the claim renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where DeVoss fails to meet this burden. *Little*, 37 F.3d at 1077.

Because DeVoss will have the burden of proof at trial on her FMLA interference claim, to be entitled to summary judgment on this claim, she "must establish 'beyond peradventure all of the essential elements of the claim[.]'" *Bank One, Tex. N.A. v. Prudential Co. Of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that DeVoss must demonstrate that there are no genuine and material fact disputes and that she is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmy. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marin Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

The FMLA guarantees eligible employees 12 workweeks of leave during any 12-month period for certain qualifying events, including a serious health condition that prevents an employee from performing work. 29 U.S.C. § 2612(a)(1). The FMLA prohibits an employer from interfering with, restraining, or denying the exercise or attempted exercise of

an employee's right to take FMLA leave. 29 U.S.C. § 2615(a)(1). "The term 'interference with' includes 'not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.'" *Bell v. Dallas Cnty.*, 432 Fed. Appx. 330, 334 (5th Cir. 2011) (per curiam) (quoting 29 C.F.R. § 825.220(b) (2010)). "To establish a prima facie case of interference under the FMLA, a plaintiff must show: (1) [she] was an eligible employee; (2) [her] employer was subject to FMLA requirements; (3) [she] was entitled to leave; (4) [she] gave proper notice of [her] intention to take FMLA leave; and (5) [her] employer denied [her] the benefits to which [she] was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017). "[E]ven if the plaintiff makes out a prima facie case, [she] may not overcome a motion for summary judgment if the employer articulates a legitimate non-discriminatory reason for the employment action at issue." *Id.* (citing *Miller v. Metrocare Servs.*, 809 F.3d 827, 832 (5th Cir. 2016)); *but see Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 350 (5th Cir. 2013) (Elrod, J., concurring) (citing *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002)) ("[i]f an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a deprivation of this right is a violation regardless of the employer's intent."). If the employer articulates a legitimate non-discriminatory reason for the employment action at issue, then "[t]o prevail in such a case, the plaintiff must raise an issue of material fact that the employer's proffered reason was pretextual." *Caldwell*, 850 F.3d at 245.

IV

The court turns first to DeVoss's interference claim.

A

DeVoss must first make a prima facie showing of FMLA interference. In deciding whether she has, the court focuses on whether she has demonstrated that she gave Southwest proper notice of her intent to take FMLA leave relating to sinusitis.[6]

1

To be entitled to FMLA leave, an employee must provide her employer notice of her intent to take leave. *See* 29 U.S.C. § 2612(e)(1) ("Requirement of notice"). Whether leave is foreseeable or unforeseeable, an employee must comply with the employer's customary procedural requirements for requesting leave. *See* 29 C.F.R. § 825.302(d). Absent unusual circumstances, an employer can delay or deny FMLA-protected leave based an employee's failure to comply with procedures. *See id*. "This regulation explicitly permits employers to condition FMLA-protected leave upon an employee's compliance with the employer's usual notice and procedural requirements, absent unusual circumstances." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 789 (5th Cir. 2017) (quoting *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614 (6th Cir. 2013)) (internal quotations omitted).

---

[6]Although Southwest discusses DeVoss's failure to comply with Southwest's FMLA notice policy under the employee entitlement to leave prong of the prima facie case, it is more properly analyzed under the notice prong. *See Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 789 (5th Cir. 2017).

2

Southwest maintains that DeVoss did not comply with its procedure for taking FMLA leave. It posits that it sent DeVoss a determination of FMLA eligibility on June 8, 2015, following her request to take leave from June 7 to 11, but that she did not timely submit an application for FMLA leave following that absence. DeVoss contends that the FMLA required Southwest to send her an additional eligibility notice following her subsequent June 24, 2015 absence. The court disagrees with DeVoss's contention.

The FMLA requires an employer to notify an employee of her eligibility to take FMLA leave "at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12-month period."[7] 29 C.F.R. § 825.300(b)(1). "All FMLA absences for the same qualifying reason are considered a single leave and employee eligibility as to that reason for leave does not change during the applicable 12-month period." *Id*. DeVoss maintains that her June 24 condition arose out of her sinusitis, the same condition that caused her absence on June 7 to 11. In her deposition, DeVoss described herself as "still sick" on June 24, relating back to her illness on June 8. D. App. 136. Because Southwest notified DeVoss on June 8, 2015 that she was eligible for FMLA leave, it was not required to provide her additional FMLA eligibility notice for subsequent absences

---

[7]When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of her eligibility to take FMLA leave within five business days, absent extenuating circumstances. *See* 29 C.F.R. § 825.300(b)(1).

related to the same qualifying reason.[8]

The court thus turns to the question whether DeVoss has made a prima facie showing that she complied with the terms in the June 8 notice. Because the evidence only permits the reasonable conclusion that DeVoss's June 24 absence is related to her absence from June 7 to 11, the court treats DeVoss's June 24 absence as part of a single leave stemming from DeVoss's qualifying reason of sinusitis. The summary judgment record reflects that Southwest notified DeVoss and outlined the procedure for requesting FMLA leave relating to her sinusitis in the June 8 eligibility notice. It informed DeVoss that she was eligible for FMLA leave and had 72 leave days remaining in her one-year period. Southwest also stated that the due date for her FMLA application was June 23, 2015, and that a failure to submit the form on time could result in leave being delayed or denied.[9]

---

[8]Even if DeVoss's June 24 condition was related to a different FMLA-qualifying reason, Southwest was not required by the FMLA to send an additional eligibility notice. This is so because "[i]f, at the time an employee provides notice of a subsequent need for FMLA leave during the applicable 12-month period due to a different FMLA-qualifying reason, and the employee's eligibility status has not changed, no additional eligibility notice is required." 29 C.F.R. § 825.300(b)(3).

[9]The form states:

> If an Employee is eligible for FMLA leave and has provided Southwest with notice of a qualifying reason for FMLA leave, it is the Employee's responsibility to complete and forward to the Southwest FMLA Team the Southwest Airlines Application under Family and Medical Leave Act (provided upon request and/or available via SWALife.com) within fifteen (15) calendar days after the date of the Employee's FMLA Eligibility Notice. If sufficient information is not provided in a timely manner, the leave may be delayed or denied.

DeVoss's failure to comply with Southwest's procedures for requesting FMLA leave precludes her from invoking FMLA protection. Although DeVoss was provided with FMLA resources at various points, the summary judgment evidence only permits the reasonable finding that she never contacted anyone at Southwest about applying for FMLA at any point before she was terminated. DeVoss acknowledged in her deposition that she knew she was eligible for FMLA leave based on her June 7 to 11 absence. She admitted that Southwest had informed her, via its employee policy, that she could apply for FMLA leave in advance.[10] And she knew that the application for FMLA leave relating to her sinusitis was due by June 23, 2015, and that a failure to submit information to Southwest in a timely manner could result in her leave being denied. But although she knew she regularly had sinus infections, she chose not to apply for FMLA leave and not to contact her leave coordinator. Because DeVoss did not follow company procedure, Southwest could have denied her leave without running afoul of the FMLA. *See* 29 C.F.R. § 825.302(d); *see also Acker*, 853 F.3d at 789 ("Formal notice-of-absence policies serve an employer's legitimate business interests in keeping apprised of the status of its employees and ensuring that it has an adequate workforce to carry out its normal operations.").

DeVoss has therefore failed to make a prima facie showing of FMLA interference because she has not demonstrated that she gave Southwest proper notice of her intent to take

---

D. App. 229.

[10]The FMLA form that Southwest provided DeVoss on June 8 contains a section for designating the need for future leave relating to a condition with intermittent flare-ups.

- 11 -

FMLA leave.[11]

B

Even if the court assumes *arguendo* that DeVoss has made a prima facie showing of interference, Southwest has carried its burden of articulating a legitimate, nondiscriminatory reason for its decision to discharge DeVoss: her dishonesty.

C

The court now considers whether DeVoss has introduced sufficient evidence for a reasonable jury to find that Southwest's articulated reason was pretextual.

1

DeVoss primarily contends that an FMLA interference claim does not require a showing that an employer acted with discriminatory intent, so Southwest's motives for discharging her are irrelevant. The court disagrees.

> [E]ven if the plaintiff makes out a prima facie case [of interference under the FMLA], he may not overcome a motion for summary judgment if the employer articulates a legitimate nondiscriminatory reason for the employment action at issue.

---

[11]DeVoss also maintains that Southwest violated the FMLA by failing to properly certify her illness under 29 C.F.R. § 825.305. But the permissive language of § 825.305 indicates that the FMLA does not impose an affirmative obligation upon the employer to obtain certification. *See Id.* § 825.305(a) ("An employer *may* require that an employee's leave . . . due to the employee's own serious health condition . . . be supported by a certification issued by the health care provider of the employee or the employee's family member.") (emphasis added); *id*. § 825.305(c) ("The employee must provide a complete and sufficient certification to the employer *if required by the employer* in accordance with . . .") (emphasis added). Moreover, given that DeVoss did not comply with company policies for notifying Southwest of her need for FMLA leave, her arguments about deficiencies in Southwest's certification procedure are immaterial.

- 12 -

> To prevail in such a case, the plaintiff must raise an issue of material fact that the employer's proffered reason was pretextual.

*Caldwell*, 850 F.3d at 245 (citation omitted). The authorities on which DeVoss relies[12] are not binding on this court.[13]

2

DeVoss maintains that Southwest's stated reason for discharging her was pretextual because Southwest did not follow proper company procedures in relation to her June 24 absence. DeVoss contends that Southwest did not properly discipline her under the Attendance Policy, which specified that she should receive a written warning, not a termination, for her failure to show up to work. But a reasonable jury could only find that the Attendance Policy was inapplicable because Southwest terminated DeVoss due to dishonesty, not due to violations of the Attendance Policy.

DeVoss also posits that Southwest's failure to send her an FMLA eligibility notice, which company policy required because she had missed more than three days of work,

---

[12]*Cuellar*, 731 F.3d at 349 (Elrod, J., concurring), and *Strickland v. Water Works & Sewer Bd. Of City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001).

[13]DeVoss also cites *Acker*, 853 F.3d 784, for the proposition that "[a]n interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA." *Id.* at 788. In *Acker*, however, the Fifth Circuit held that the plaintiff failed to make a prima facie showing of FMLA interference and did not discuss the issue of employer intent. This court is bound by Fifth Circuit decisions such as *Caldwell* and *Miller*, which require in an interference claim that a plaintiff prove pretext when the employer articulates a legitimate, nondiscriminatory reason for the employment action. *See Caldwell,* 850 F.3d at 245; *Miller*, 809 F.3d at 832.

suggests pretext. Southwest company policy provides that an eligibility notice is generated automatically when a flight attendant is absent more than three days. But DeVoss only took three sick leave days.[14] Thus her absence did not trigger the company policy for sending an eligibility notice.

Other than these arguments, all that remains is DeVoss's "bald assertion" that she was discharged based on her entitlement to FMLA leave, which is insufficient to allow her claim to survive summary judgment. *See Caldwell*, 850 F.3d at 244 (applying Americans with Disabilities Act (ADA) pretext analysis to pretext analysis under FMLA) (citing *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 814 (5th Cir. 1991)) (granting summary judgment when plaintiff offered no "evidence of pretext beyond his own bald assertion that he ha[d] been discriminated against"). A reasonable jury could only find that, following a thorough investigation, Goulbourne believed for several reasons that DeVoss had been dishonest during the June 24, 2015 call to the Southwest scheduling representative. DeVoss has not introduced sufficient evidence for a reasonable jury to find that Southwest's articulated reason for discharging DeVoss was pretextual. *See Cervantez v. KMGP Servs. Co.*, 349 Fed. Appx. 4, 10 (5th Cir. 2009) (per curiam) ("[A] fired employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted on it in good faith.") (Age Discrimination in Employment

---

[14]The doctor note offered by DeVoss excused her from work beginning on Wednesday, June 24, 2015, with a return date of Monday, June 29, 2015. DeVoss's attendance record shows that she took three sick leave days on Wednesday, Thursday, and Friday during the period of her absence. D. App. 194.

Act of 1967 case).

Because a reasonable jury could not find in favor of DeVoss on the issue of pretext, the court grants Southwest's motion for summary judgment and dismisses DeVoss's FMLA interference claim.[15]

V

Southwest also moves for summary judgment dismissing DeVoss's FMLA retaliation claim.

A

The FMLA makes it unlawful for an employer to discharge or retaliate in any other manner against an individual for opposing the employer's unlawful FMLA practices. *See* 29 U.S.C. § 2615(a)(2). To prevail on an FMLA retaliation claim, DeVoss must first demonstrate a prima facie case for retaliation by showing that (1) she engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action. *See Miller v. Metrocare Servs.*, 2015 WL 477233, at *5 (N.D. Tex. Feb. 5, 2015) (Fitzwater, J.), *aff'd*, 809 F.3d 827 (5th Cir. 2016), *cert. denied*, 136 S. Ct. 2463 (2016).

If DeVoss establishes a prima facie case, the burden shifts to Southwest to articulate

---

[15]Because the court is dismissing DeVoss's FMLA interference claim on the grounds set out in this memorandum opinion and order, it does not address Southwest's contention that sinusitis does not qualify as a "serious health condition" under the FMLA, or that DeVoss failed to present evidence that Southwest's employment actions caused her harm under 29 U.S.C. § 2617.

- 15 -

a legitimate, nonretaliatory reason for the alleged retaliatory action taken. *See Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008). If Southwest meets this production obligation, the burden shifts back to DeVoss to show "by a preponderance of the evidence that the reasoning presented by [Southwest] is a pretext for retaliation ." *Smith v. Sw. Bell Tel. Co.*, 456 Fed. Appx. 489, 492 (5th Cir. 2012) (per curiam) (quoting *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 584 (5th Cir. 2006)) (internal quotation marks omitted).

B

Southwest maintains for two reasons that DeVoss has not offered sufficient evidence to support a prima facie case of FMLA retaliation: first, DeVoss has not shown that she engaged in protected conduct because she did not take FMLA leave; and, second, DeVoss's failure to request FMLA leave undermines any finding that Southwest discharged her due to a decision to take FMLA leave.

DeVoss does not address any of Southwest's arguments concerning the retaliation claim. Although DeVoss's failure to respond does not permit the court to enter a "default" summary judgment on this claim, *see, e.g., Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.), "[a] summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence," *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Moreover,

- 16 -

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Rule 56(e)(2), (3).

Because DeVoss has not designated specific facts that would enable a reasonable jury to find in her favor on her FMLA retaliation claim, the court grants Southwest's motion for summary judgment and dismisses this claim with prejudice.

\* \* \*

For the reasons stated, the court grants Southwest's motion for summary judgment on DeVoss's claims for FMLA interference and FMLA retaliation, denies DeVoss's motion for partial summary judgment,[16] and enters judgment in favor of Southwest dismissing this lawsuit with prejudice.[17]

---

[16]Because the court is granting Southwest's motion for summary judgment on DeVoss's FMLA interference and FMLA retaliation claim, it holds that DeVoss has not carried her burden to establish beyond peradventure all of the essential elements of her FMLA interference claim.

[17]On September 9, 2017 DeVoss objected to the magistrate judge's order on DeVoss's motion to compel discovery from Southwest. Even if the court assumes *arguendo* that the objection is sufficient—*cf. Librado v. M.S. Carriers, Inc.*, 2004 WL 583602, at \*4 (N.D. Tex. Mar. 23, 2004) (Fitzwater, J.) ("This means that, at a minimum, the party must identify the ruling being challenged, specify the standard of review, and explain why the decision in question is reversible under that standard.")—the court need not consider the objection in light of the grounds on which it relies to grant Southwest's summary judgment motion and deny DeVoss's motion for partial summary judgment.

**SO ORDERED**.

November 13, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE